**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ADANNA FOUNTAIN, *on behalf of M.L. and T.F.*, et al.** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil No. 1:26-cv-120-HSO-BWR** |
| | § | |
| **MEMORIAL HOSPITAL AT GULFPORT *doing business as Memorial Hospital Biloxi*, et al.** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION [21] FOR JUDGMENT ON THE PLEADINGS**

In this medical negligence case that also includes a claim under the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, Defendants seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to the EMTALA claims and ask the Court to decline supplemental jurisdiction over the remaining state-law claims. *See* Mot. [21]. Because the Complaint [1] fails to state plausible EMTALA claims, the Motion [21] should be granted. The Court will decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims and will dismiss them without prejudice.

## I. BACKGROUND

### A. Factual Background

The Complaint [1] alleges that on May 15, 2025, Kimyius Lawler ("Mr. Lawler" or "Kimyius") became unresponsive and fell to the floor at his place of employment. *See* Compl. [1] at 2; *see also* Am. Compl. [12] at 1 (realleging all

allegations from the Complaint [1]). Emergency Medical Services ("EMS") found Mr. Lawler face down and unresponsive, with "blood-tinged saliva flowing from his mouth." Compl. [1] at 3. During transport to Defendant Memorial Hospital at Gulfport, doing business as Memorial Hospital Biloxi (the "Hospital"), Mr. Lawler "vomited, went in and out of consciousness with borderline hypoxia and received Narcan prior to arrival to the hospital." *Id.* Upon arrival at 9:08 p.m., Mr. Lawler "woke up briefly before being transferred to the hospital bed, where 'he became unconscious again and just slept.'" *Id.*

Mr. Lawler was examined by Defendant Dr. Christopher Smelley ("Dr. Smelley") at 9:32 p.m., who noted that Mr. Lawler "was alert and oriented x 3, but with no specific neurologic examination findings mentioned." *Id.* Dr. Smelley ordered an electrocardiogram ("EKG"), a complete blood count ("CBC"), a comprehensive metabolic panel ("CMP"), ethanol level, and urine drug screen. *See id.* Dr. Smelley ultimately diagnosed Mr. Lawler with "marijuana hyperemesis syndrome and syncope" and discharged him around 11:50 p.m. *Id.* "Prior to discharge, Kimyius was noted as having an oxygen level of 69%, though it is unclear if this reading was communicated by nursing staff to Dr. Smelley." *Id.*; *see* Ex. [1-1] at 3, 4 (report of Plaintiffs' expert physician noting Dr. Smelley documented an oxygen saturation level of 94% but that prior to discharge "Kimyius was noted at having an oxygen level of 69%," though the "records are unclear whether the 69% oxygen reading was communicated by nursing staff to Dr. Smelley prior to discharge").

Mr. Lawler's girlfriend met him outside the emergency room and found him "lethargic, confused, coughing up blood and unsteady." Compl. [1] at 4. She drove Mr. Lawler to his car at his place of employment, but Mr. Lawler subsequently "drove off the road and was later found dead in his car." *Id.* An autopsy revealed that Mr. Lawler died of "sudden cardiac death due to probable unspecified cardiomyopathy." *Id.*

B. Procedural History

Invoking federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under § 1367, *see id.* at 1-2, Plaintiffs Adanna Fountain, on behalf of Mr. Lawler's minor children M.L. and T.F., and the Estate of Kimyius Lawler, individually and on behalf of Mr. Lawler (collectively, "Plaintiffs"), have filed suit in this Court against the Hospital and Dr. Smelley (collectively, "Defendants"), *see id.* at 1; *see also* Am. Compl. [12] at 1; Order [19]. Plaintiffs advance state-law claims for negligence under the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-1, et seq., and federal claims for violation of EMTALA, 42 U.S.C. § 1395dd. *See* Compl. [1] at 4-6. Defendants have answered Plaintiff's Complaint [1] and Supplemental and Amended Complaint [12]. *See* Ans. [7]; Ans. [17].

Defendants' Motion [21] for Judgment on the Pleadings argues that Plaintiffs cannot bring a claim against Dr. Smelley under EMTALA and that the pleadings fail to state an EMTALA claim against the Hospital, which are the only federal claims brought in this case. *See* Mot. [21]; Mem. [22] at 4-15. Defendants ask the

Court to decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss them without prejudice. *See* Mem. [22] at 1, 15-19.

Plaintiffs respond that, "[a]s properly stated in Defendant's [sic] motion to dismiss, EMTALA does not create a private cause of action against individual physicians," Resp. [24] at 6, and they acknowledge the EMTALA claims against Dr. Smelley should be dismissed, *see id.* at 17. But Plaintiffs argue that the facts plead "a cognizable screening and stabilization claim under EMTALA" against the Hospital. *Id.* at 3. They insist that discovery will likely show Defendants failed to screen Mr. Lawler under 42 U.S.C. § 1395dd(a), *see id.* at 6-8, and, citing new medical records obtained post-filing,[1] they contend that Defendants violated § 1395dd(b) because, even though there were clear indications that Mr. Lawler "was suffering an emergency medical condition, Dr. Smelley discharged him without stabilizing that condition," *id.* at 8. In the event the Court finds Plaintiffs' EMTALA claims against the Hospital are inadequately pled, they contend the Court should grant them leave to amend under Federal Rule of Civil Procedure 15(a)(2), as they "did not have Kimyius' complete medical records when the Complaint was filed" and "key evidence bearing on the screening and stabilization claims remains within Defendants' exclusive control." *Id.* at 18.

[1] "As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court." *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021). But even if the Court considered the new allegations in the Response [24], the result would not change.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the pleadings have closed. *See* Fed. R. Civ. P. 12(c). Courts apply the same standard to motions brought under Rule 12(c) and Rule 12(b)(6). *See Hayes v. GStek, Inc.*, 175 F.4th 603, 607 (5th Cir. 2026). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In deciding whether a complaint states a valid claim for relief, a court must "accept all well-pled facts as true and construe all reasonable inferences in the light most favorable to the plaintiff." *Robinson v. Midland Cnty.*, 80 F.4th 704, 709 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1010 (2024) (quotation and alterations omitted). But the Court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quotation omitted).

B. Plaintiffs' EMTALA Claims against Dr. Smelley

"In 1986, Congress enacted EMTALA to ensure public access to emergency services regardless of a patient's ability to pay," and it "applies to every hospital that has an emergency department and participates in Medicare." *Texas v. Becerra*, 89 F.4th 529, 533 (5th Cir.), *cert. denied*, 145 S. Ct. 139 (2024). Under EMTALA, an individual who presents to a Medicare-participating emergency department and requests examination or treatment must be provided an appropriate medical screening and, if necessary, treatment or transfer to another medical facility. *Id.* at 534 (citing 42 U.S.C. § 1395dd).

EMTALA contains a civil enforcement mechanism against "the participating hospital" to obtain personal injury damages. *See* 42 U.S.C. § 1395dd(d)(2)(A). But as the parties acknowledge, EMTALA does not afford a private right of action against an individual physician. *See id.*; *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 389 (2024) (recognizing that "EMTALA does not impose obligations on individual doctors"); *Scott v. N. Louisiana Med. Ctr.*, No. CV 16-0376, 2016 WL 8470184, at *12 (W.D. La. Sept. 9, 2016) ("By its terms, EMTALA authorizes a private cause of action only against hospitals, not individuals, employees, or physicians."), *report and recommendation adopted sub nom. Scott v. Ruston Louisiana Hosp. Co., LLC*, No. CV 16-0376, 2017 WL 979104 (W.D. La. Mar. 14, 2017); *Richardson, By & Through Rogers v. Sw. Mississippi Reg'l Med. Ctr.*, 794 F. Supp. 198, 200 (S.D. Miss. 1992) ("A review of the language of the Emergency Medical Treatment and Active Labor Act shows that no express private right of

action exists against a physician or group of physicians.”). Defendants’ Motion [21] should be granted as to the EMTALA claims against Dr. Smelley.

C. Plaintiffs’ EMTALA Claims against the Hospital

1. Failure-to-Screen Claim

“There are three stages to EMTALA: (1) screening; (2) stabilizing; and (3) transfer.” *Becerra*, 89 F.4th at 533. Plaintiffs’ first EMTALA claim is for failure to screen under 42 U.S.C. § 1395dd(a), which provides that, if any individual comes into an emergency department requesting examination or treatment,

> the hospital *must provide for an appropriate medical screening examination* within the capability of the hospital’s emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists.

42 U.S.C. § 1395dd(a) (emphasis added).

The statute does not define “appropriate medical screening examination,” *id.*, but the Fifth Circuit has held that the appropriateness of the examination is “not judged by its proficiency in accurately diagnosing the patient’s illness, but rather by whether it was performed equitably in comparison to other patients with similar symptoms,” *Marshall on Behalf of Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998). “A patient can prove disparate impact by showing that the hospital did not follow its own standard screening procedures or by pointing to differences between the screening examination that the patient received and examinations that other patients with similar symptoms received at the same hospital.” *Guzman v. Mem’l Hermann Hosp. Sys.*, 409 F. App’x 769, 773 (5th Cir.

2011) (per curiam) (citing *Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000)). "A patient can also prove an EMTALA violation by showing that the hospital provided such a cursory screening that it amounted to no screening at all." *Id.* A physician's "failure to appreciate the extent of the patient's injury or illness, as well as a subsequent failure to order an additional diagnostic procedure, may constitute negligence or malpractice, but cannot support an EMTALA claim for inappropriate screening." *Marshall*, 134 F.3d at 323.

In this case, the pleadings simply parrot the statute and make the conclusory assertion that the Hospital "failed to provide Kimyius an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition existed." Compl. [1] at 6; *see* Am. Compl. [12] at 1. The Court need not accept such conclusory allegations. *See Ferrer*, 484 F.3d at 780; *United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 762 (5th Cir. 2025).

The facts as they are pled fault Dr. Smelley and other Hospital staff for not accurately diagnosing Mr. Lawler, *see* Compl. [1], but under § 1395dd(a), the question is not whether there was negligence but whether the examination of Mr. Lawler "was performed equitably in comparison to other patients with similar symptoms," *Marshall*, 134 F.3d at 322. The pleadings contain no factual allegations indicating that the Hospital failed to follow its own standard screening procedures,

or pointing to any differences between the screening that Mr. Lawler received and examinations that other patients with similar symptoms received, or tending to show that the Hospital provided such a cursory screening that it amounted to no screening at all. *See* Compl. [1]; Am. Compl. [12]; *Marshall*, 134 F.3d at 323; *Guzman*, 409 F. App'x at 773. Simply put, beyond conclusory labels, the pleadings lack factual content that would plausibly allege any disparate or inequitable treatment of Mr. Lawler. *See* Compl. [1]; Am. Compl. [12]. This is insufficient to state a failure-to-screen claim under EMTALA, *see Marshall*, 134 F.3d at 322, and Defendants' Motion [21] should be granted as to this claim, *see* 42 U.S.C § 1395dd(a).

2. Failure-to-Stabilize Claim

Plaintiffs next argue that the Hospital failed to stabilize Mr. Lawler in violation of EMTALA, which provides that,

> [i]f any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and *the hospital determines that the individual has an emergency medical condition*, the hospital must provide either—
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
> (B) for transfer of the individual to another medical facility in accordance with subsection (c).

42 U.S.C. § 1395dd(b)(1) (emphasis added). An emergency medical condition is defined, in relevant part, as:

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
> (i) placing the health of the individual . . . in serious jeopardy,

> (ii) serious impairment to bodily functions, or
> (iii) serious dysfunction of any bodily organ or part . . . .

*Id.* § 1395dd(e)(1)(A).

If a hospital conducts an appropriate medical screening examination and determines the patient does not have an emergency medical condition, it does not owe a duty under EMTALA to provide further medical treatment, to stabilize the condition prior to discharge, or to transfer the patient to another facility. *See Marshall*, 134 F.3d at 325 (citing 42 U.S.C. § 1395dd(b)(1)). In other words, a hospital must have had actual knowledge of the individual's unstabilized emergency medical condition before a duty to stabilize arises. *See id.*; *Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1140 (8th Cir. 1996).

In this case, Plaintiffs' Response [24] to Defendants' Motion [21] argues that

> Kimyius was suffering from a readily apparent emergency medical condition. As pleaded, Kimyius was suffering from a critically low oxygen saturation of 69% and a critically low blood pressure. Moreover, he was unable to sign either his patient-rights acknowledgment or his discharge instructions and he experienced repeated lapses of consciousness. It is readily apparent that Kimyius was suffering from an emergency medical condition, notwithstanding Dr. Smelley's diagnosis.

Resp. [24] at 9.

But the pleadings do not allege that Dr. Smelley, who made the diagnosis and discharge decisions, was aware that Mr. Lawler was unable to sign either the acknowledgment or discharge instructions, or that any Hospital staff member had actual knowledge or drew the conclusion from Mr. Lawler's symptoms and condition at discharge that he was suffering an actual medical emergency. *See* Compl. [1];

Am. Compl. [12]. The Complaint [1] itself, as well as the expert report Plaintiffs attached in support of their Complaint [1], acknowledges that it is unclear whether the low oxygen level reading was communicated by nursing staff to Dr. Smelley, who was the physician who diagnosed and then discharged Mr. Lawler. *See* Compl. [1] at 3; Ex. [1-1] at 1.

Plaintiffs' expert posits that either the nursing staff violated the standard of care if the low oxygen level was not communicated to Dr. Smelley, or Dr. Smelley violated it if it was communicated to him, *see* Ex. [1-1] at 4, and the Complaint [1] alleges that Dr. Smelley and the other staff should have recognized what Plaintiffs characterize as "an obvious emergency medical condition," Compl. [1] at 6. But negligence or breach of the applicable standard of care is not the issue. The relevant question for purposes of an EMTALA stabilization claim is whether the Hospital had actual knowledge of Mr. Lawler's unstabilized emergency medical condition, not whether they missed it. *See Marshall*, 134 F.3d at 325; *Stiles v. Tenet Hosps. Ltd.*, 494 F. App'x 432, 435 (5th Cir. 2012) (per curiam) ("The duty to stabilize does not arise merely because the hospital 'should have' or 'could have' discovered the emergency condition."). The Complaint [1] does not plead sufficient factual detail tending to show that Dr. Smelley or other Hospital staff actually drew the conclusion that Mr. Lawler in fact had an emergency medical condition, obviating the need to stabilize the condition prior to discharge. *See Marshall*, 134 F.3d at 325; *Stiles*, 494 F. App'x at 435; Compl. [1]; Am. Compl. [12].[2] Plaintiffs

---

[2] *See also, e.g., Palmer v. Shawnee Mission Med. Ctr., Inc.*, 355 F. Supp. 3d 1003, 1019 (D. Kan. 2018) (holding that, even though pregnant woman presented "symptoms of cramping,

have not stated a plausible claim under § 1395dd(b). *See* 42 U.S.C. § 1395dd(b); *Marshall*, 134 F.3d at 325.

D. Whether the Court Should Permit Another Amendment

Plaintiffs have already amended their pleadings once, *see* Compl. [1]; Am. Compl. [12], but in the event the Court finds their pleadings lacking, they request leave to amend a second time because they "did not have Kimyius' complete medical records when the Complaint was filed" and "key evidence bearing on the screening and stabilization claims remains within Defendants' exclusive control," Resp. [24] at 18.

Under Rule 15(a)(2), the Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless there is a substantial reason to deny leave to amend," *Doe 1 v. City View Indep. Sch. Dist.*, 150 F.4th 668, 677 (5th Cir. 2025) (per curiam) (quotation omitted). "Substantial reasons include repeated failure to cure deficiencies by amendments previously allowed and futility of amendment." *Id.* (quotations omitted). "Amending pleadings would be futile if the complaint as

---

leaking fluid, and vaginal bleeding," summary judgment was appropriate on EMTALA claim because no facts established that "providers actually knew that she was in active labor because she was exhibiting these symptoms"); *Moore v. Grand View Hosp.*, No. 13-2384, 2014 WL 6676535, at *7 (E.D. Pa. Nov. 24, 2014) (holding that expert's opinions that "nurses knew what needed to be done" but failed to comply "with their professional responsibilities to ensure their patients' welfare" sound in medical malpractice or negligence and "do not support an EMTALA stabilization claim" because there was no evidence that anyone at the hospital believed or had actual knowledge that the patient presented with a medical emergency); *Stiles v. Tenet Hosps. Ltd.*, No. EP-09-CA-463-FM, 2011 WL 13070423, at *7 (W.D. Tex. Aug. 16, 2011) (holding that even if hospital staff knew patient was in severe pain and had an elevated white blood count, under the language of the statute, hospital staff had to also know that "these symptoms were in fact manifestations of a medical condition requiring immediate treatment"), *aff'd*, 494 F. App'x 432 (5th Cir. 2012).

amended would be subject to dismissal." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 662 (5th Cir. 2025) (quotation omitted).

Plaintiffs' tacked-on request to amend contained in their Response [24] violates the Court's Local Uniform Civil Rules because it was not filed as a separate motion. *See* L.U. Civ. R. 7(b) ("Any written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this rule."); L.U. Civ. R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response."); *Williams v. BFI Waste Servs., LLC*, No. 3:16-CV-75-DPJ-FKB, 2017 WL 1498230, at *3 (S.D. Miss. Apr. 24, 2017) (stating "a motion cannot be asserted in the body of a response"). Plaintiffs, who are represented by counsel, also did not attach a proposed Second Amended Complaint for the Court to consider, as required by the Local Rules. *See* L.U. Civ. R. 7(b)(2). The request to amend should be denied for these reasons alone.

Nor have Plaintiffs adequately explained how they would rectify the deficiencies in their pleadings. The party seeking leave to amend must "set forth with particularity the grounds for the amendment and the relief sought," and "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (citation omitted); *see*

*also Hicks v. Ashworth*, No. 24-20331, 2025 WL 3281407, at *4 (5th Cir. Nov. 25, 2025) (per curiam) (same). The Fifth Circuit has held that where, "almost as an afterthought, the plaintiffs tacked on a general curative amendment request to the end of their response in opposition to the defendants' motion to dismiss" when they were made "aware of the defendants' objections to their complaint as written" given the defendants' motion, a district court does not abuse its discretion in denying leave to amend. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254-55 (5th Cir. 2003).

Plaintiffs' request to amend does not suggest what additional facts they would offer to cure the deficiencies identified by Defendants. While they did offer some additional allegations in their Response [24], the Court has already concluded that, even if considered, the result would not change, rendering the request to amend futile. *See Clark*, 141 F.4th at 662. The request to amend should be denied. *See id.*; *Willard*, 336 F.3d at 387; *Hicks*, 2025 WL 3281407, at *4; *Williams*, 2017 WL 1498230, at *3.

E. <u>Whether the Court Should Exercise Supplemental Jurisdiction</u>

28 U.S.C. § 1367(a) affords supplemental jurisdiction over state-law claims not within a court's original jurisdiction, but that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). But the statute "spells out circumstances . . . in which a federal court may decline to hear a state claim falling within the statute's bounds," *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025), including if "the district court has dismissed all claims over which it has original

jurisdiction," 28 U.S.C. § 1367(c)(3). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) (per curiam) (quotation omitted). In deciding whether to exercise supplemental jurisdiction, a court considers the "common law factors of judicial economy, convenience, fairness, and comity." *Id.* (quotation omitted). "And based on these factors, [the Fifth Circuit has] elucidated the general rule that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Id.* (quotation omitted).

Considering the foregoing factors, the Court finds that it should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims, which are not within its original jurisdiction. *See id.*; 28 U.S.C. § 1367(c)(3); Compl. [1] at 1-2; Am. Compl. [12] at 1. This case remains in its infancy, and trial is not set until August 2027. Little, if any, discovery has occurred, and the federal claims will be dismissed well in advance of any trial. The Court therefore declines to exercise supplemental jurisdiction and will dismiss Plaintiffs' state-law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result. Defendants' Motion [21] for Judgment on the Pleadings should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Memorial Hospital at Gulfport, doing business as Memorial Hospital Biloxi, and Dr. Christopher Smelley's Motion [21] for Judgment on the Pleadings is **GRANTED**, and the claims of Plaintiffs Adanna Fountain, on behalf M.L. and T.F., and the Estate of Kimyius Lawler, individually and on behalf of Kimyius Lawler, brought against Defendants Memorial Hospital at Gulfport, doing business as Memorial Hospital Biloxi, and Dr. Christopher Smelley under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**. A separate Final Judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 14th day of August, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE